Good morning. David Lane for Appellant. I'd like to reserve two minutes. May it please the Court. Erick Arevalo is currently sitting in jail because of a bail determination that, by the State's own admission, violated the Constitution. After the California Appellate and Supreme Courts nonetheless rejected his bail challenge, he filed this habeas action under Section 2241c3, a statute the purpose of which is to permit Federal Courts to grant pretrial relief to State prisoners held in violation of the Constitution. Every day that passes, he suffers irreparable loss of his fundamental right to liberty. And if he cannot obtain relief before trial, he will never be able to vindicate that right. That is reason enough to decide this case. But beyond that, the district court's decision to abstain under Younger was wrong because Younger's prerequisites are not met. In the words of this Court's en banc decision in Gilbertson, abstention is not warranted because his bail claim is wholly unrelated to the pending prosecution. Under Younger, abstention is permitted only where the relief sought would enjoin or have the practical effect of enjoining ongoing State proceedings. That is not the case here. The relief that Mr. Arevalo seeks cannot prevent or enjoin or interfere with ongoing bail proceedings because there are none. He exhausted. And it cannot interfere with the prosecution because it is totally collateral to the issues involved in the prosecution. Indeed, the Supreme Court's decision in Stack to — Kennedy, you say there are no ongoing bail proceedings. What do you want from this case? You want it to be returned to the State court so the State court can engage in bail proceedings? Yes. The relief that's been requested is a writ of habeas corpus that states that the State must release Arevalo unless it provides him with a new bail determination that complies with the constitutional requirements determined in this case, specifically consideration of ability to pay, consideration of nonmonetary alternatives, and the determination made on clear and convincing evidence rather than by a preponderance of the evidence. Now, I've seen your 28J letter that you filed yesterday, which seems to suggest that in a very short time, this case is going to be moot. I don't think that — Doesn't it seem that way? I don't think that — I certainly credit the intuition and the concern that this Court may have about stepping in at this time when the court of appeal in California has issued this Humphrey decision, effectively reaching the same legal conclusions that are requested in this habeas case. But that does not moot this case out. There are legal and practical considerations going on here. The first is the legal consideration, which is that there's no obligation for us to go to State court now and re-exhaust under intervening decision. And we cited the case law to that effect in our 28J letter a few days ago. But the practical reality is also that there's no certainty of relief ever or promptly in State court under Humphrey. That decision is not binding yet. It's not binding until the 24th of February. The initial indications that I have received from defense counsel on the ground in California are that California State judges are not abiding by Humphrey at all or in a consistent way. They are — But in your case, your client's going to go to trial in less than a month. Oh, that's — that is why we've requested this case be heard on an expedited basis. We've tried to accommodate you, but the fact is, you know, in a very short period of time, he won't be a pretrial detainee any longer. That's true. No question it will become moot. That's true. And that's why this case needs to be heard and decided as quickly as possible and not diverted through some sort of procedure in State court for Humphrey under Humphrey. If he can't get the relief quickly, he will never be able to vindicate that right. And it is a serious problem to have constitutional rights that cannot be vindicated, particularly when there is a statutory mechanism for precisely this circumstance, 2241c3. So if he can't get that relief, he suffers a serious irreparable harm. That is an independent basis to not abstain under Younger. But at the prerequisite stage, those prerequisites are not met. And Braden is clear about this. Under the circumstance here and in Braden, where the claim that's presented was exhausted in State court, and it is collateral to the merits of the ongoing prosecution, it's not a defense to the prosecution, and it's not asserted to dismiss or otherwise abort the prosecution, there are no legitimate Federalism interests that are raised by the Federal habeas action. That's what Braden concluded, and it applies equally here. So we have an unpublished decision, as you know, Lazarus, which goes the other way. I realize it's not binding on us, but do you distinguish that case, or do you think it's just wrongly decided? I think primarily it's just wrongly decided. The — it didn't consider two key issues. One was that the issue there was collateral to the prosecution, and the other is that the interference that the Court did identify is not cognizable interference under Younger. What the Court said was that there's a possibility of non-appearance at trial. That is not enjoining or having the effect of enjoining the prosecution. That's the ordinary risk in every pretrial release on conditions. There's always some possibility, but there's a — of non-appearance. But there's a constitutional right to have that if the conditions are adequate to mitigate that risk. And even if Mr. Arvalo were to not appear, that would not prevent the State from seeking continuance to find him. But it doesn't have the effect of — you know, in Gilbertson, this Court walks through the kinds of decisions that have the effect that Younger recognizes and is concerned about preventing. It's an injunction. It's a declaratory judgment on an issue that is part of the case-in-chief or a defense to the merits of the ongoing action. It is a damages action that turns on the constitutionality of the ongoing proceeding. None of those are implicated by the possibility that on appropriate conditions of pretrial release, he might not appear. But we — you're not asking us to determine what the appropriate conditions of pretrial release are. You're just — Absolutely not. As I understand it, that is, whether the State court decides to lower the bail, change the bail, that's entirely beyond the scope of what you're asking for. Correct. We are simply asking — I think you're asking for a constitutionally sufficient bail hearing. That is correct. And with three — So if that being the case, and I — Yes. Because I think you've covered that, in fairness. And I appreciate the clarification. It's not that apparent from the briefing, or at least it seems to get lost a little bit in the briefing. Okay. So I appreciate the clarification. But what about the Humphreys case? And what about the spirit of the Younger doctrine, that the State has this new opinion? Should we abstain and let the State play that out? Well, from a Younger standpoint, certainly not, because Younger is evaluated at the time that the Federal action is initiated, and Gilbertson so states. Practically, I still think that there are significant concerns about whether he could get relief promptly or at all in State court under Humphrey. For the reasons I was mentioning earlier, it's not binding yet. State judges don't seem to be following it. We don't know what will happen. There's also a larger institutional — That goes to something that's a little trickier than I think you may be acknowledging. There's cases like where double jeopardy is implicated, and that's a case — that's a circumstance where we say, well, that right is truly lost if it's not vindicated. Right? And I put that sort of in one category. And then there's other cases where constitutional rights are at stake, like Speedy trial. And we don't necessarily intervene there. Right? Those cases — those cases are bisected into two different categories, depending on whether someone's asserting his affirmative defense or just asking to please — please order the State to hurry up and try me. That's correct. And Braden recognizes that distinction in the Sixth Circuit, and Atkins recognizes that distinction between a Sixth Amendment Speedy trial claim to say dismiss the prosecution and a Sixth Amendment Speedy trial claim to say hold the trial. And the hold the trial is something that has to — that right has to be vindicated promptly before trial, or promptly, otherwise it will be lost. If the delay continues, the right is lost. And bail is the same way, even more so. The Supreme Court in Stack allowed interlocutory appeal under the collateral order doctrine because that right is effectively lost if you cannot appeal it before — vindicate it before the trial is concluded. And that's why there's so much pressure to decide this case quickly without waiting to see what may or may not happen in State court in light of Humphrey. There's also important institutional interests here. We have district courts that have now diverged within this circuit, within this district, on whether Younger prevents or requires abstention on a habeas petition in this posture. And there is this Lazarus case, which is not binding, but it's out there, and the district court here, of course, followed it. So I think that there's an imperative for this Court to clarify when Younger properly applies. I think you've answered my question. Okay. And I have no other spot of time. Thank you. Good morning, Your Honors. I may please the Court. Katie Stowe from the California Attorney General's Office for Respondent Appellee. When a criminal defendant challenges a pretrial State court bail determination, he seeks the kind of interference in an ongoing criminal prosecution that Younger v. Harris prohibits. Why is this bail challenge an interference with an ongoing proceeding in the Younger sense? Because of all of the risks that it poses to the ongoing criminal prosecution. I don't know what that means, all the risks it poses. It doesn't pose any risks that a bail decision by the State trial court would pose, does it? Same kind of risks. So there are potentially — What different risks does it pose? So there are potentially two pathways and two avenues of relief that are sought. One would be release, and one would be release stayed to allow the State court to hold a new bail hearing. And I think that went to Judge Kristin's question. But there — I do not understand them to be asking us to order the State court grant this person bail. That would be an entirely different case, in my view. My understanding is they're asking for the writ to be granted to require a constitutionally adequate bail hearing. And he may well be denied bail. That's my understanding. So I would point the Court to page 66 of the exercise of record, which is the petition itself, which does seek release from the Federal court. Right. So I mean, there are three possibilities. One, we order release. Two, we say a conditional release. He's released unless you give him a constitutionally adequate hearing. Or three, we just order the hearing. Correct. So to get back to Judge Tashima's question, what's the risk for the prosecution in any of those? And if I may step back, I think the third option is unavailable in a habeas case. I think, actually, it has to be the second option, which is he is ordered to be released unless the constitutionally adequate bail hearing is held, because the Federal district court can't actually order the State court to do anything other than release the Petitioner. Well, you know, we've granted writs before saying you unless you retry them in a certain time period, then the writ is granted. Then he is released. Exactly. So let's focus on the fact, just presuming for the sake of argument, that the State court said that we were to order a constitutionally adequate bail hearing. What's the risk to the prosecution of that? I think the example that best illustrates that is what's happening in the Northern District of California in the case in which the court declined to abstain, and that's the Ream v. Hennessey litigation. And so we've now had three State court bail hearings. We've been back in district court at least twice. There have been several rounds of supplemental briefing, because the exact contours of a constitutionally adequate bail hearing depend on the facts that are presented at that hearing, whether or not the facts support the findings. But the adequacy of the bail hearing doesn't interfere with the prosecution itself. In other words, the prosecution can continue. The consumption of judicial resources in hearing these, you know, multiple State bail hearings, the time of the attorneys. Whose resources are you talking about? Ours? No, I mean the State court. The State court is hearing, is rehearing continually Mr. Ream's bail hearings upon the directions and at the request of the Federal court, because that's the case. Because otherwise. Because they say it's not constitutional, right? Correct. Yeah. So that's what we do. I mean, I don't understand your argument in this case, because you have agreed that he is entitled to a to-do process in a hearing, right? Absolutely. And can you tell me why you think he's a flight risk? He's facing a very serious length of time in custody. I believe it's seven years to life on the attempted murder. Right. And so what you have on the hearing in the record is that he was, the public safety assessment was that he was not a flight risk. That he had always appeared in court, right? That's what's on the record. That's my understanding is that there were no failures to appear. Yes. So what's the State's position on if we remand for a bail hearing, are you going to say he's a flight risk? Because I don't think you said so before. Yes, I believe both flight risk and public safety risk will be argued. And that detention would be perfectly appropriate, even if it's solely related to the public safety risks and the victim safety risk. So you intend to oppose release? Or what's the State's position if there is a hearing? Or can you commit at this point? Yes, detention would absolutely be sought in the State court. Because of what sort of bond would you impose, seek? In the Attorney General's view, it should not be a monetary bond, because this individual is unable to post financial conditions of release. And so the decision instead should be made, are there conditions of release that would meet the State's interests in ensuring public safety and ensuring appearance at trial? Or is detention the least restrictive means to meet those interests? Has that inquiry happened? It has not. And that's why we concede error in this case. So what we have in the record of this case, correct me if I'm wrong, you have a public safety assessment that says he's not a flight risk, that he's always appeared, and that he's not dangerous to the public, right? Isn't that what the PSA says? It gave him the lowest rating? I don't believe the safety assessment addressed whether or not he was a risk to  I would be surprised if that was the case, given the attempted murder and child endangerment and domestic violence charges. And he said that, his attorney said in the petition, that he would be released in care of his church, true? That representation was made. And that he would submit to any conditions that the Court wished to impose upon his release, true? Correct. Okay. The other point I'd like to make in response to the State's questions is that there is, in response to the Court's questions, there are many decisions addressing this kind of entanglement in the bail process. What's your strongest authority? O'Shea v. Littleton, and the cases following it, many of which are in this circuit and in other circuits, all discuss the kind of entanglement that is implicated by Federal court supervision of individual bail determinations prior to trial. And that's clearly prohibited by Younger. What's your position about whether or not the Humphreys' decision does or not does not change this calculation? We view the Younger calculation, sorry. Yes. We view Humphrey as related to the extraordinary circumstances, exception to Younger abstention, that Petitioner has invoked in this case. And one case that I would point the Court to is Huffman v. Pursue, Ltd. That's a Supreme Court case in which an intervening decision came down from a State court after the Federal petition had been filed, and the Court observed that that could affect the irreparable injury calculus. And in that case, the Supreme Court remanded to the district court for consideration of how that would affect the claimed irreparable injury. So is that your response to opposing counsel's position that we take this as of the snapshot that existed as of the time the petition was filed? Correct. And we view that as it's an exhaustion argument that counsel is making. There's no requirement, and certainly in the 2254 cases that counsel cites, there's no requirement to re-exhaust every time there's a new State court decision. But the question here is, is he going to be face irreparable injury that is sufficiently great and immediate to warrant an extraordinary circumstances exception to Younger abstention? And Humphrey, I think, complicates that question. You didn't raise Younger abstention in the district court. That's correct, Your Honor. So what is the consequence of that? We don't believe that the failure to raise was a waiver. And you did more than just not raise it, right? We immediately proceeded to the merits. There was an express statement. Well, you didn't just immediately proceed to the merits. And we agreed with the merits. Right. And so that's pretty extraordinary. So what do we do with that? We think that it would be more helpful to have a rule that applies to the category of pretrial bail litigation claims being brought in Federal court than just a rule on the, as you said, unique circumstances of waiver in this case. But I think there's very helpful Supreme Court authority, and there's certainly nothing cited that says that a waiver could not potentially be revoked when the Court raises the issue sua sponte within six days of the alleged waiver. So I just don't think that there's support that a district court can't permit such a revocation of the waiver. If that argument had been made in the district court, we could have amended our answer as of right under Rule 15. We could have amended the answer with leave of court under 28 U.S.C. 2243. Let me ask you a question about potential mootness. Now, as I understand, this case is going to go to trial by the end of this month. So in a few weeks, there's going to be a plea, a conviction, or a not guilty verdict. In any of those cases, Aravalo will no longer be a pretrial detainee entitled to bail. So my question is, do you think that makes it, this case would be moot at that time? Or is there some exception to mootness that applies to this case? We do think the case would be moot at that time. One way in which it would be mooted is that if he is convicted, he will obtain custody credits for every day that he spent in pretrial detention that will be taken off of any ultimate sentence. So we're going to be convicted, which we do not assume, but that is, again, one of the pathways of mootness would be conceivably a repair to the supposedly irreparable injury. Well, but to Judge Tshima's point, the irreparable injury is the right to be free unless being equal, you know, in pretrial, preconviction. So what's your next argument? Well, we don't concede that he does have the right to be free. He has a right to a constitutionally permissible bail here. Exactly. And I guess I'm speaking in shorthand, but I think you know what I'm talking about. Yes. This is preconviction. It seems to me there's this mootness question that Judge Tshima has. And for the State to say, well, that's okay, he's not going to lose his right because we're going to give him credit for those days spent in jail, that works if he's convicted. And, you know, hence my interjection. You can't assume he's going to be convicted. Absolutely. So what's your next argument? So mootness is often contemplated by application of the Younger Doctrine. The Federal courts, Federal district courts, are often never able to reach constitutional claims because they were mooted out over the course of a State court prosecution, because in a civil case, issue preclusion applies. So the Court's deference in favor of State court civil proceedings — It's really the rare case where we step in. It's really the rare case. And that's why we look to, for example, the double jeopardy right, because that really is lost if not vindicated. And I will grant you this is a very narrow sliver, but defense counsel's argument is, or Petitioner's argument is, that this is akin to that, because the right to have a constitutional legitimate, you know, determination about his pretrial release is indeed lost if not vindicated. What is your best response to that? I think double jeopardy is unusual in many ways, and one of which is as a practical matter, it's a binary decision. Either the State is allowed to try the person or not. And in this case, the continuing entanglement of were the conditions of release that were imposed actually the least restrictive conditions. But I don't think that's what he's asking us to get down into the weeds about. Were the conditions permissible or not? Was the bail set too high or not? And that's why I've been sort of a broken record on that point. I think what he's looking for, reasonably looking for, in the best-case scenario, to give him the benefit of the doubt, is an order just requiring the constitutionally permissible bail hearing. And then he may or may not get bail. Correct. And the Federal court will be called upon to resolve the challenges to the subsequent bail hearing. And perhaps you don't. But he's got to have a hearing. I mean, you can see that. He's entitled to a hearing. And he did have a hearing. And, again, if he hadn't But he asked for an evidentiary hearing, and he was — that was denied. Well, you agreed he didn't have a constitutionally sufficient hearing. Correct. In the district court. So isn't he entitled to that? So I would point the Court to this Court's decision in Drury v. Cox, which was a challenge to the determination of probable cause that was made at a preliminary hearing. And this Court said, we absolutely are not going to review that pretrial. Now, that claim will necessarily moot out because the person will either be convicted or acquitted, but the — it did not justify interference under Younger. There's a serious exhaustion question there with that example. There's — because there's always the right to challenge the probable cause determination on appeal with a State court proceeding. There's all kinds of reasons it wouldn't step into that. Well, again, the State — the ability to challenge it in State court is unresolved at this point. The ability to raise it in the Supreme Court on a petition for certiorari from the State Court's denial of his petition is an available remedy here. He was able to raise what? The bail question? He could have raised his constitutional challenge to his bail hearing in — on a petition for certiorari. How can that be addressed? How can that be addressed on an appeal from what? The conviction? No, from the denial of his State habeas petition. The — there's a finality rule for State court judgments. But it will be moot. I mean, because there's no relief the court can give him. Well, again, he had 90 days from the time that the California Supreme Court denied review. No, what I'm saying is, no matter — suppose Supreme Court grants cert, no matter what decides, there's no relief they can give the — give the petitioner. What kind of relief can they give him? We don't know exactly how that timeline would map onto this timeline. It's why it's akin — It's going to take more than 90 days to, you know, to even get the petition on the calendar for consideration. Let me get back to a more pressing question on the mootness. You know, there's a — there's an established exception to mootness if the proceeding is of the type that's so short, and, you know, the question is whether a bail proceeding is that kind of proceeding, that it's — the injury is — the alleged injury is capable of repetition, yet it evades review because of the shortness of time in which to consider it. You think that exception would apply to a mootness doctrine here? The Supreme Court has held that it does not, and Petitioner in this case has conceded that it would not apply in seeking an expedited review by this Court. Do you have a case for that? I apologize. I do not remember offhand. All right. But you think there's a case? I do. All right. Thank you. Any further questions? Thank you for your argument. We'll put on three minutes for rebuttal. Thank you, Your Honor. I just wanted to make three quick points. The first is about mootness. The Supreme Court in Stack, the premise of that decision is that the bail determination — or the bail challenge is moot if not determined before trial. The Court has recognized that again in subsequent cases. The Sixth Circuit said so in the Atkins case as well. I don't think it's a controversial principle that the claim becomes moot once there's a trial, because it is a pretrial liberty interest at stake. The second point is about Humphrey. We're not just making an exhaustion point. We're also making a younger point. Gilbertson says in explicit terms that the application of younger — of abstention principles is determined at the time that the Federal action is initiated. So if there's some theoretical way in which irreparable harm might now be, you know, not in the offing because of Humphrey, that's — that's irrelevant. It's determined at the time of filing. In addition, we think that it's not even — it's far from clear that he would get the relief that he seeks in State court, notwithstanding Humphrey. The third point is O'Shea. O'Shea and subsequent cases have not held that bail challenges threaten State prosecutions. This Court in Courthouse News, in reading O'Shea, was very clear. Every order that a Federal court issues has the possibility for further litigation back in that court for compliance or enforcement purposes. That's not enough to create an O'Shea problem. What created the O'Shea problem was a two-tiered structure that was unusual and — and doesn't come up in very many cases, but came up in O'Shea. The first order, as the Seventh Circuit described it when it conceived the order, was that the initial decree would set out the general tone of rights. Basically, don't discriminate on the basis of race in conducting law enforcement and justice — justice activities. And then it would allow defendants in all future cases in the jurisdiction to go immediately to Federal court any time they had any objection to a State action that could, in the abstract, be deemed to violate that principle, and — and assert a claim to be determined ab initio, without exhaustion in State court, while State proceedings were ongoing, under standards that had never been articulated, to ask the Court to articulate the specific standards in the first instance in that follow-on case. In other words, it was using compliance as a pretext to develop a — a system of effective superintendence of the State justice system. And Courthouse News discusses that, and it distinguishes other cases that this Court has heard, L.A. County Bar on the one hand, E.T. on the other, where that difference is really dispositive of O'Shea. Is it just a general order that the district court is using as a crowbar to get in and supervise all ongoing State proceedings? Or is it a specific relief that's being requested, specific standards? Mr. Arvalo is requesting specific standards be imposed. And tellingly, O'Shea, as far as I know, has never been applied in a habeas case, because habeas does not implicate the kind of concerns that the order that O'Shea implicated. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision. Thank you both for your arguments and your briefing.
judges: Tashima, Thomas, Christen